### FEBRUARY TERM;

#### AND AT THE

### CIRCUIT SESSION, IN OCTOBER, 1856.

---

PRESENT;

HON. ISAAC F. REDFIELD, CHIEF JUDGE.
HON. PIERPOINT ISHAM,  }  ASSISTANT JUDGES.
HON. MILO L. BENNETT,  }

---

## CHARLES BLOOD v. JOHN J. CRANDALL.

### Jurisdiction.  Pleading.

A court will obtain jurisdiction as to both of two defendants, if they both appear by attorney and answer to the action, though the writ was served upon but one of them, and a *non est* return was made as to the other.

An averment, in pleading, that John J. Crandall became bail, by endorsing his, the said Crandall's, name of J. J. Crandall, on the writ, &c., is equivalent to an aver-

ment that he endorsed the writ by the name of J. J. Crandall, and that this name is identical with that of John J. Crandall.

A declaration in *scire facias*, against bail, is insufficient if it shows that the defendant in the original action, (being an action *ex contractu*,) was a resident of one of the United States, and it is not averred that he was not a citizen, or that an affidavit was filed as the reason for the issuing of the process against his body.

SCIRE FACIAS against the defendant, as bail for Michael Fallon. The declaration averred that the plaintiff, on the 16th of June, 1851, took out his writ of attachment against Michael Healey and Michael Fallon, both of the state of New York, in an action of book account, and delivered the same to John J. Crandall to serve, &c.,—and that he served said writ, by arresting the body of said Fallon, and that the defendant became bail and surety for the said Fallon, &c.,—that the writ was returned and entered in court, and such proceedings had thereupon that the plaintiff recovered a judgment against the said Healey and Fallon for, &c.,—upon which judgment the plaintiff took out execution, upon which a *non est* return was made as to both the bodies and estate of the said Healey and Fallon, &c. (A more particular statement of the averments, which were held insufficient, is given in the opinion of the court, *q. v.*)

The defendant plead, 1st, *nul tiel record*, to which the plaintiff replied that there was such a record, &c.,—and upon this issue, a certified copy of the writ and record relied on were introduced, from which it appeared that, upon the writ, the officer made a *non est* return as to Healey, but according to the record, "the said suit having been duly entered in court, the defendants came by * * their attorney; and the defendants confessed that they ought to account," &c.; and it was considered by the court "that the plaintiff recover of the defendants," &c.

2d *plea;* that the defendant did not become bail and surety for the said Michael Fallon in manner and form, &c.; *replication,* that the defendant ought not to be admitted or received to plead said plea, because he, as deputy sheriff, made return on said writ, "that " he, the said John J. Crandall, became his, the said Fallon's bail, " by endorsing his, the said Crandall's said name of J. J. Crandall, " on said writ, as bail thereon," &c.; to this replication the defendant, after setting out the return in full, demurred.

*3d plea;* that the execution against Fallon and Healey improvi-dently issued, and was void, for that it issued upon a judgment re-covered in an action founded upon a contract, and that no affidavit was filed; and to this plea the plaintiff demurred.

The county court, September Term, 1854,—UNDERWOOD, J., presiding,—decided, upon the first issue, that there was such a record;—upon the second issue, that the replication was sufficient; —and, upon the third issue, that the plea was insufficient. Ex-ceptions by the defendant.

*Keyes & Howe, E. Kirkland* and *P. T. Washburn* for the de-fendant.

*R. W. Clarke* for the plaintiff.

The opinion of the court was delivered by

REDFIELD, CH. J. The first question made in the case is, in regard to the sufficiency of the record to show a valid judgment against both defendants, in the original action. There was a *non est inventus* return as to Michael Healey, but the record expressly states that both defendants appeared, by attorney, and answered in the action. This, of itself, was sufficient to give the court jurisdic-tion in the action as to both defendants, when there was no service at all, as there was not here, as to the defendant Healey; *Spalding* v. *Swift*, 18 Vt. 214. After such an appearance by attorney, the party is estopped, by the record, from denying the fact of appear-ance in the action. The only remedy is by application to the court rendering the judgment, and where the record remains; *Newcomb* v. *Peck*, 17 Vt. 302. It has been held that when, in such a case, the plaintiff takes judgment against both defendants, without any appearance for the outlawed party, that the judgment, as to him, is without any force.

The second issue ends in a demurrer to the replication, where the defendant's return is relied upon, as an estoppel to his pleading that he did not become bail. The only objection is to the certainty of the replication. But it seems to us there is no difficulty upon this point. The replication avers that the defendant, as deputy sheriff, made return, subscribed with his name, John J. Crandall,

" that he, the said John J. Crandall, became his, the said Fallon's bail, by endorsing his, the said Crandall's said name of J. J. Crandall, on said writ, as bail thereon." It seems to us it requires a a great deal of refinement upon language, as to identity and difference, to raise any fair and reasonable doubt as to the averment that the defendant endorsed the writ, as bail, by the name of J. J. Crandall, and that this name is identical with John J. Crandall. It is probable that objection is the most plausible that could be fairly made against the pleading, but it seems not a little shadowy.

In regard to the sufficiency of the third plea, it is undoubtedly true that, if the general process of the courts goes only against property, the party who attempts to justify the arrest of the body, by a capias, must show affirmatively the right to have such a writ. And, if the law exempts the body of all resident and non-resident citizens of this state, or the United States, as it did at this time; in a case of the kind just stated it would be incumbent to show positively, on the part of the plaintiff, that the person arrested was not a citizen, if that fact were relied upon as the ground of maintaining the capias. But the present case is somewhat different, in regard to the state of the pleading. Here the process issues as a capias, and it is, as against the plea, entitled to the common presumption in its favor, *omne rite actum.* It is the pleader here who attempts to get rid of the process, and presumptions are made, to a reasonable extent, against the pleader. It seems to us that if we can assume that the process, in the first instance, issued rightfully against the body of the defendants, merely because they were non-residents, (and in the absence of all showing the execution should rightfully follow the mesne process,) if the defendant claims an exemption, under a statute exempting one class of non-residents from arrest, and presents this by way of plea, he should, in his plea, allege that the defendants are of that class, *i. e.,* that they were citizens of the United States.

But the difficulty in this case is, that the declaration seems to us insufficient. It is averred that the plaintiff took his writ of attachment against two defendants, residing in the state of New York, such a writ, at the time alleged, June, 1851, by the general laws of the state, running against the body of all non-residents. But, in January after, the legislature required that

all process, for the collection of matters of contract, whether mesne or final, should go only against the property of any citizen of the United States. The execution, in this case, issued after this date, and the averments in the declaration, in regard to the form of the writ, are perfectly general, merely that the party prayed out his writ of execution, signed by the clerk, and made returnable in sixty days, and delivered the same to the sheriff within thirty days from the rendition of the judgment, and procured a regular *non est* return to be made within sixty days from that date. Here is nothing to show, even argumentatively, that this execution went against the body, unless it is to be inferred from the fact that the sheriff made a *non est inventus* return upon the writ. But this might naturally enough have been a mere blunder. We should scarcely be justified in making any presumption upon such a basis. It is not even averred that the execution was in due form of law; and, if that is to be presumed, as perhaps it is, the result is, that we must take notice of the alteration of the law, at the session in 1851, and that, as the law stood at the time of issuing the execution, residents and non-residents were upon the same footing. The only difference was made in regard to citizenship. And, as the general presumption is in favor of citizenship, it seems to us it was incumbent upon the plaintiff, in his declaration, to aver that he took an execution against the body of the debtor, and we think, also, that he should have alleged that the defendants, or debtors, were not citizens, or else that he filed his affidavits, under the statute. This is different from a case where the debtor changed his residence, and thus acquired, under the former law, a right to have his body exempted from arrest on the final process. The plaintiff was not bound to take notice of such fact, even if made known to him, but might take an execution following the mesne process. But in the present case a general law exempts all citizens of the United States, who reside in any other state. The plaintiff's declaration shows that the debtors in this execution resided in New York, when sued, and we cannot presume they have changed their residence. They are, then, residents of New York, and it can scarcely be argued that the general *status* of residents is that of aliens. We must say, then, that as the law was at the date of the final process, the plaintiff was only entitled to a writ against the property, unless by

filing an affidavit, or by alleging that the defendant was not a citizen. And, if the plaintiff relied upon either of these facts, both of which are exceptions, he should have averred the facts making the exception. This is, in principle, the very point decided in *Aiken* v. *Richardson*, 15 Vt. 500, since the case of residents and, non-residents, by the act of 1851, were placed upon the same footing.

We do not think the application of the act of 1851, to this case, is impairing the obligation of contracts, within the United States constitution, as it pertains only to the remedy; and before the bail is fixed, the creditor cannot be justly said to have acquired any vested interest in, or by the undertaking of the bail. It is a mere possibility.

Judgment reversed and, unless the plaintiff chooses to amend his declaration, we shall proceed to enter up the proper judgment for the defendant.